April 25, 2017

Mitchell Adolphson                                          Via Email: madolphson@brcins.com
Brown and Riding Insurance Services, Inc.
901 5th Ave Ste 2300
Seattle, WA 98164-2075

**Re: Tarter Farm & Ranch** Equipment
     **10739 South U S 127**
     **Dunnville, KY 42528**
     **Policy Number: CH17DOL329598IV**

Dear Mitchell:

Attached please find the above captioned policy. Please review it carefully.

If you have any questions or concerns regarding this letter, please contact Keith Dau at (312) 506-8179
or kdau@navg.com

Thank you for considering Navigators Insurance Company for your professional liability insurance
programs.

Sincerely,

Sarah Markos
Underwriting Assistant - Management Liability
Tel: (312) 506-8174
Fax: (312) 506-8193
smarkos@navg.com

 **N**avigators

2017 POLICY

# Thank you
## for being
## our policyholder



BEST PLACES TO WORK



**Navigators Insurance Company**
*One Penn Plaza*
*New York. NY 10119*

Policy Number: CH17DOL329598IV

# DECLARATIONS

Attached to and forming part of

## SmartPolicy

This insurance is effected with

**Navigators Insurance Company**

**THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1. **Corporation** (name and address):
Tarter Farm & Ranch Equipment
10739 South U S 127
Dunnville, KY 42528

ITEM 2. **Policy Period:**

From: April 1, 2017
To:     April 1, 2018
At 12:01 a.m. standard time, at the address shown in ITEM 1

ITEM 3. **Defense Option:**

**EI**   Duty to Defend          ❑          No Duty to Defend

ITEM 4. **A. Liability Coverage Parts Issued as Part of This Policy:**

**D**   DIRECTORS AND OFFICERS LIABILITY
 ❑   Optional Entity Coverage under INSURING AGREEMENT C
 ❍   Optional Investigation Costs Coverage under INSURING AGREEMENT D

 ❍   EMPLOYMENT PRACTICES LIABILITY
 ❍   Optional Third Party Coverage

 ❑   FIDUCIARY LIABILITY
 ❑   Optional Settlement Program Coverage

ITEM 4. B. **Non-Liability Coverage Parts Issued as Part of This Policy:**

   ❑ CRIME (If checked, refer to separate Declarations attached to the Crime Coverage Part)

   ❑ KIDNAP, RANSOM, & EXTORTION (If checked, refer to separate Declarations attached to the Kidnap, Ransom, & Extortion Coverage Part)

ITEM 5. **Liability Coverage Parts Limits of Liability:**

  a. $3,000,000 maximum aggregate limit of liability for all Loss, including **Costs of Defense,** under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased

   i. $250,000 maximum aggregate limit of liability for all **Investigation Costs** under Optional Investigation Cost Coverage under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased

   ii. $1,000,000 Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers

  b. $1,000,000 maximum aggregate limit of liability for all **Loss,** including **Costs of Defense,** under EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased

  c. N/A maximum aggregate limit of liability for all **Loss,** including **Costs of Defense,** under FIDUCIARY LIABILITY Coverage Part, if purchased

   i. N/A maximum aggregate limit of liability for all **Settlement Program Expenditures** under Optional Settlement Program Coverage under FIDUCIARY LIABILITY Coverage Part, if purchased

  d. $5,000,000 maximum aggregate limit of liability for all **Loss,** including **Costs of Defense,** under this Policy

ITEM 6. **Liability Coverage Parts Retentions:**

  a. Under DIRECTORS AND OFFICERS LIABILITY Coverage Part:
   (i) $0 Each Claim under Insuring Agreement A
   (ii) $15,000 Each Claim under Insuring Agreement B
   ( ) $15,000 Each Claim under Insuring Agreement C
   (iii)N/A Each Claim under Insuring Agreement D

  b. $50,000 Each **Claim** under EMPLOYMENT PRACTICES LIABILITY Coverage Part,if purchased

  c. **N/A** Each **Claim** under FIDUCIARY LIABILITY Coverage Part,if purchased

ITEM 7. **Liability Coverage Parts Prior and Pending Date:**

  a. Under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased: April 1, 2017

  b. Under EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased: March 13, 2014

  c. Under FIDUCIARY LIABILITY Coverage Part, if purchased: N/A

ITEM 8. **Premium:** $22,000

ITEM 9. **Waiver of Recourse Premium:** N/A

ITEM 10. **Forms and Endorsements Attached at Issuance:**

| | | | | |
|---|---|---|---|---|
| NAV-SPDO-001 (09/08) | NAV-SPGT-001 (09/08) | NAV-SPEP-001 (09/08) | NAV-SIG-001 (10/01) | NAV-PHN-209-KY (05/10) |
| NAV-ML-002 (11/12) | NAV-PDL-300-KY (09/08) | NAV-PDL-567 (01/09) | NAV-DOMA-080 (07/03) | NAV-DOMA-080 (07/03) |
| NAV-PDL-001 (11/12) | NAV-PDL-006 (11/12) | NAV-PDL-007 (11/12) | NAV-PDL-008 (11/12) | NAV-PDL-009 (11/12) |
| NAV-PDL-013 (11/12) | NAV-PDL-562 (01/09) | NAV-PDL-661 (03/10) | NAV-PDL-662 (03/10) | NAV-PDL-663 (03/10) |
| NAV-PDL-676 (09/08) | NAV-PDL-680 (09/08) | NAV-PDL-707 (12/09) | NAV-PDL-709 (06/10) | NAV-PDL-717 (07/10) |
| NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-ML-TERRA (02/15) | | NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) | NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) | NAV-DOMA-080 (07/03) NAV-DOMA-080 (07/03) NAV-PDL-718 (07/10) |

**These Declarations, the signed and completed Application and the Policy, with endorsements, will constitute the contract between the Insured and the Insurer.**

Issuing Office: Chicago                                                Issue Date: April 25, 2017

# DIRECTORS AND OFFICERS LIABILITY COVERAGE PART

### THIS ISA CLAIMS-MADE POLICY
### WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.
### PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"). including the statements made in the **Proposal Form.** and subject to all terms. conditionsand limitations of this Policy. the **Insuredsand** the Insurer agree:

### Section I. Insuring Agreements

A.      The Insurer will pay to or on behalf of the **Insured Personsall Loss** which the **Insured Persons** are legally obligated to pay asa result of a**Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period. if purchased. for a **Wrongful Act** by the **Insured Persons.** except for Losswhich the **Company** actually pays as advancement or indemnification.

B.      The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay asa result of a **Claim** first made against the **Insured Personsdu** ring the **Policy Period** or the Discovery Period. if purchased. fora **Wrongful Act** by the **Insured Persons.** but only to the extent the **Company** is required or permitted by law to pay such **Lossto** or on behalf of the **Insured** Personsas advancement or indemnification.

C.      If it isstated in ITEM 4 of the Declarationsthat the Optional Entity Coverage under INSURING AGREEMENT Cof thisCoverage Part has been purchased. the Insurer will pay to or on behalf of the **Company** all **Losswhich** the **Company** is legally obligated to pay asa result of a**Claim** first made against it during the **Policy Period** or the Discovery Period. if purchased. for a **Wrongful Act** by the **Company.**

D.      If it is stated in ITEM 4 of the Declarationsthat the Optional Investigation Costs Coverage under INSURING AGREEMENT D of this Coverage Part has been purchased. the Insurer will pay to. or on behalf of the **Company, Investigation Costswhich** the **Company** is legally obligated to pay as a result of a **Derivative Demand** first received by the **Company** during the **Policy Period** or the Discovery Period. if purchased.

### Section II. Definitions

**A.**      For purposes of this Coverage Part. the term **"Claim**⁻ will include an administrative or regulatory investigation of an **Insured Person** which iscom menced by the filing or issuance of a notice of charges. formal investigative order or similar document specifically identifying in writing such **Insured Person** asa person against whom a **Claim.** as defined in Section **II.A** of the GENERAL TERMSAND CONDITIONS. may be brought. **"Claim"** will also include an extradition order or similar document.

B.   **"Derivative Demand"** will mean any written demand by or on behalf of any holder of securities issued by the **Company,** in his or her capacity as such, made upon the board of directors or managers of the **Company** to bring a civil proceeding against one or more of the **Insured Persons** for **a Wrongful** Act, but only if such demand is m ade totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person.**

C.   **"Employee"** will mean:

1.   any individual whom the **Company** compensates by wages, salary and/or commissions and whose labor or service is directed by the **Company,** whether such individual perform s such labor or service on a full-time, part-time, seasonal or temporary basis;

2.   any individual who performs labor or services for the **Company** as a volunteer; and

3.   any individual who is leased or loaned to the **Company** to perform labor or service for the **Company,** but only if the **Company** provides indemnification to such individual in the same manner and to the same extent as to its other **Employees.**

D.   For purposes of this Coverage Part, the term **"Insured"** will mean the **Company** and all **Insured Persons.**

E    For purposes of this Coverage Part, the term **"Insured Person"** will mean:

1.   any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company;**

2.   any in-house general counsel of the **Company;**

3.   any executive of the **Company** located outside of the United States of America who holds a position with respect to the **Company** equivalent to any position described in Sections II.C.1 or II.C.2 above; or

4.   any **Employee.**

F.   **"Investigation Costs"** will mean reasonable and necessary expenses incu rred by the **Company** or any committee of the **Company's** board of directors or managers in the investigation and evaluation of a **Derivative Demand;** provided, however, that **Investigation Costs** will not include salaries, wages, overhead or benefit expenses associated with any **Insured.**

G.   For purposes of this Coverage Part, the term **"Loss"** will include pre- and post-judgment interest and, if it is stated in ITEM 4 that Optional Investigation Costs Coverage has been purchased, **Investigation Costs. "Loss"** shall not include any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of the **Company's** securities.

With respect to any Claim arising out of any Public or Private Offering of Securities of the **Company,** the Insurer shall not assert that the portion of any settlement and/or **Costs of Defense** of that **Claim** which relates to any alleged violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and shall treat that portion of such settlement and/or **Cost of Defense** as constituting **Loss** under the Policy.

H.   **"Outside Capacity"** will mean service by an **Insured Person** as a director, officer, trustee, regent, governor or equivalent executive of an **Outside Entity,** but only if such service is with the knowledge and consent of, or at the request of, the **Company.**

I.   **"Outside Entity"** will mean any corporation or organization other than the **Company** which is exempt from taxation under Sections 501(c)(3)- (10), 501(c)(19), 501(d) or 509(a)(1) — (3) of the Internal Revenue Code of 1986, as amended, or any rule or regulation promulgated thereunder.

J.   For purposes of this Coverage Part, the term **"Wrongful Act"** will mean:

1.   any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as such with the **Company;**

2.   any matter claimed against any **Insured Person** solely by reason of his or her status with the **Company;**

3.   any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her **Outside Capacity;** or

4.   with respect only to coverage under INSURING AGREEMENT C, if purchased, any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company.**

## Section III. Exclusions

A.   The Insurer will not be liable under this Coverage Part to make any payment of **Loss,** including **Costs of Defense,** in connection with any **Claim** made against any **Insured:**

1.   brought about or contributed to by:

   a.   the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

   b.   the deliberately fraudulent or criminal acts of any **Insured;**

   provided, however: (i) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; (ii) this exclusion shall not apply to coverage provided under Insuring Agreement B; and (iii) sub-paragraph (a) of this exclusion above shall not apply to any **Claim** arising out of an initial public offering, secondary public offering, a follow-on public offering, or private placement offering of securities of the **Company;**

2.   based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement;

3.   based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the **Company,** any **Insured** as of the Prior and Pending Date stated in ITEM 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

4.   for any actual or alleged:

   a.   bodily injury, sickness, disease or death of any person, mental anguish, emotional distress, invasion of privacy, trespass, nuisance, wrongful entry or eviction, assault, battery, loss of consortium, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, defamation or slander; or

b.       damage to or destruction of any tangible property, including the loss of use thereof;

5.       for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended, or any rulesor regulations promulgated thereunder;

6.       for any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as an **Employee,** director, officer, trustee, regent, governor or equivalent executive of any entity other than the **Company** or an **Outside Entity,** even if directed or requested by the **Company** to serve in such capacity;

7.       for any **Wrongful Act** of any **Insured Person** in his or her **Outside Capacity** with respect to any **Outside Entity,** if such **Claim** is brought by or on behalf of the **Outside Entity** or any **Employee,** director, officer, trustee, regent, governor or equivalent executive thereof;

8.       by or on behalf of any **Insured** or any security holder of the **Company;** provided, however, that thisexclusion shall not apply to any **Claim:**

a.       brought by any **Insured** where such **Claim** isin the form of across-claim or third party claim for contribution or indemnity which ispart of and results directly from a **Claim** which is not otherwise excluded by the terms of this Coverage Part; or

b.       brought by any security holder of the **Company,** whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person;**

c.       brought in any bankruptcy proceeding by or against any entity included within the term **"Company"** by any creditorscom mittee, examiner, trustee, receiver, liquidator or rehabilitator appointed with respect to such entity;

d.       brought by any **Insured Person** who has neit her served in such capacity nor as consultant to any entity included within the term **"Company"** for at least three (3) years prior to such **Claim** having been first made;

e.       brought by any **Insured Person** of any entity included within the term **"Company"** formed and operating outside the United States of America or any of itsterritoriesor possessions against such **Company** or any **Insured Person** thereof, if such **Claim** is broug ht and maintained outside the United States of America, Canada or any other common law jurisdiction; or

f.       arises out of, is based upon, or is attributable to any whistleblower activity, including but not limited to any such activity protected under the Sarbanes-Oxley Act of 2002, the False Claim sAct, or any similar federal, state, local or foreign law or statute;

9.       based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind; provided, however, that thisexclusion shall not apply to any **Claim** alleging any violation of the securities laws of the United Statesof America, brought by a security holder of the **Company** if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person;**

10. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any initial public offering of the Company'ssecuritiesor any registration statement or prospectus related thereto; provided, however, that if such initial public offering is not completed or consummated, this exclusion will not apply to **Wrongful Acts**in connection with the **Company's** preparation for such initial public offering, including any related road show, or its failure to go public.

11. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the performance by any **Insured** of professional services for others for a fee or other compensation or remuneration; provided, however, that this exclusion will not apply to any aaim brought by a security holder of the **Company,** alleging any violation of the securities laws of the United States of America, if the security holder bringing such **aaim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person,** or brought by a security holder of the **Company** alleging that the **Insured** Personsfailed to supervise or manage or were negligent in supervising or managing the **Insureds'** performance of professional services for othersfor afee or other compensation or remuneration;

12. for any **Wrongful Act** of any **Subsidiary** or the **Insured Persons**of such **Subsidiary** or any entity that merges with the **Company** or the **Insured Persons** of such entity that merges with the **Company** occurring:

   a. prior to the date such entity became **a Subsidiary** or was m erged with the **Company;**

   b. subsequent to the date such entity became **a Subsidiary** or was merged with the **Company** which, together with **a Wrongful Act** occurring prior to the date such entity became **a Subsidiary** or wasmerged with the **Company,** would constitute **Related Wrongful Acts;** or

   c. subsequent to the date the **Corporation** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary.**

**B.** The Insurer will not be liable under the Optional Entity Coverage under INSURING AGREEMENT C, if purchased, to make any payment of **Loss,** including **Costs of Defense,** in connection with any **Claim** made against the **Company:**

1. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement;

2. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

   a. wrongful dismissal, discharge or termination;

   b. sexual or other workplace harassment, including quid pro quo and hostile work environment;

c.  unlawful employment discrimination;

d.  employment-related invasion of privacy, defamation (including libel and slander) or negligent or intentional infliction of emotional distress;

e.  failure of the **Company** to create, provide for or enforce adequate or consistent employment-related policies;

f.  retaliatory treatment on account of an **Employee's** exercise or attempted exercise of his or her employment-related rights under law, including but not limited to Sections806 and 1107 of the Sarbanes- Oxley Act of 2002;

g.  violation of employment-related civil rights relating to any of the above; or

h.  violation of the Family and Medical Leave Act of 1993;

3.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged infringement or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark, trade secrets or other intellectual property, however thisexclusion will not apply to a Claim alleging any violation of the securities laws of the United States, brought by a security holder of the **Company** if the security holder bringing such **Claim** isacting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person;**

4.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged price fixing, restraint of trade, monopolization, unfair trade practices or violation of the Federal Trade Com mission Act,the Sherman Anti-Trust Act, the Clayton Act, or any other statute or law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or activities in restraint of trade.

C.  For the purpose of determining the applicability of the foregoing exclusions, no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person,** and only the **Wrongful Actsof** any president, chief executive officer or chief financial officer of the **Company** shall be imputed to the **Company.**

**Section IV. Claims Against Insured Personsfor Wrongful Acts in Their Outside Capacity**

A.  In the event a **Claim** is made against an **Insured Person** for **Wrongful Acts** in his or her **Outside Capacity** with respect to any **Outside Entity,** t he coverag e afforded under this Coverage Part in respect of such **Claim** will be specifically excess of, and will not contribute with, any insurance available to such **Insured Person** from such **Outside Entity** and any advancement or indemnification such **Outside Entity** is required or permitted to make to such **Insured Person.** If the Insurer shall have issued any policy or policiesof insurance to such **Outside Entity,** payment by the Insurer under any such policy in respect of such **Claim** will reduce and may therefore exhaust, by the amount of such payment, the Insurer's Limit of Liability available under this Coverage Part for such **Claim.**

B.  For purposes of this Section IV, the certificate of incorporation, charter or other organizational documents of each **Outside Entity,** including by-laws and resolutions, will be deemed to require advancement and indemnification of **Loss** to such **Outside Entity'sdirectors,** officers, trustees, regents, governors and equivalent executivesto the fullest extent permitted by law.

**Section V. Additional Excess Aggregate Limit of Liability**

A.  Notwithstanding anything in this Policy or this Coverage Part to the contrary, the Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers will be an additional Excess Limit of Liability in an aggregate amount not to exceed the amount stated in Item 5.a.ii of the Declarations, which amount isin addition to and not part of the Limitsof Liability stated in Item 5.a. of the Declarations.

   In the event the Additional Excess Aggregate Um it of Liability Dedicated for Directors and Officers is exhausted by payment of **Loss,** or has been tendered to or on behalf of Directors and Officers, then any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished.

B.  No coverage shall be provided by Section V of this Coverage Part for the first **Claim** made for which coverage is provided under t his Coverag e Part. This Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers is available solely for **Loss** resulting from any subsequent **Claim** that is covered under Insuring Agreement A of this Coverage Part. The first **Claim** m ade f or which coverage isprovided under this Coverage Part shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer.

C.  The Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers shall be excess of any insurance available to pay **Loss** for such **Claims,** including this Policy and all insurance that is specifically excessto this Policy. Such excessinsurance must be completely exhausted by payment of loss, damages or costs of defense, ast hose terms are defined by such excessinsurance, before the Insurer shall have any obligation to make any payment on account of the Additional ExcessAggregate Limit of Liability Dedicated for Directors and Officers.

D.For purposes of this provision only, Directors and Officersshall only mean:

   1.  any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company;**

   2.  any in-house general counsel of the **Company;** or

      any executive of the **Company** located outside of the United States of America w ho holds a position with respect to the **Company** equivalent to any position described in Sections V.D.1 or V.D.2 above.

**Section VI. Waiver of Retention under Certain Circumstances**

A.  No retention will apply under this Coverage Part to **Loss,** including **Costs of Defense,** incurred by the **Insured Personsif** advancement or indemnification of such **Lossby** the **Company** is neither required nor permitted under applicable law or, if advancement or indemnification of such **Loss** by the **Company** is required or permitted under applicable law, such advancement or indemnification is not made solely by reason of the **Company's Financial Insolvency.**

B.    If, in connection with any **Claim, a final adjudication, with prejudice, pursuant to atrial, motion to dismiss** or motion for summary judgment **or acomplete and final settlement, with prejudice, establishes that no Insured** is liable f or any Lossin connection **with such aaim, no retention** will **apply to Costs of Defense incurred in** connection with such **Claim** and, **subject to all other terms, conditions and limitations of this Policy applicable to this**Coverage Part, t he Insurer **will reimburse the Insuredsfor** any **covered Costs of Defense paid by them in** connection with such **Claim.**

## Section VII. Sub-Limit of Liability and Retention Applicable to Investigation Costs

A.    The Insurer's m aximum aggregate Limit of Liability for **Investigation Costswill be the amount set forth in** ITEM 5.a.i of the Declarations, which amount will be part of, and not in addition **to, the Insurer's** maximum aggregate Limit of Liability for all **Loss u nder this** Coverage Part asset forth in ITEM 5.a of **the Declarations.**

B.    No retention amount will apply to **Investigation Costs** payable under thisCoverage Part.

## Section VIII. Order of Payments

A.    **Loss,** including **Costs of Defense,** covered under this Coverage Part will be paid by the Insurer in the following order:

1.    first, the Insurer will pay such **Loss,** including **Costsof Defense,** covered under INSURING AGREEM ENT A of this Coverage Part;

2.    with respect to whatever amount of the Insurer's Lim it of Liability under thisCoverage Part remains after the payment of **Loss,** including **Costs of Defense,** covered under INSURING AGREEM ENT A of this Coverage Part, the Insurer will then pay such **Loss,** including **Costs of Defense,** covered under INSURING AGREEMENT B of thisCoverage Part; and

3.    with respect to whatever amount of the Insurer's Limit of Liability under this Coverage Part remains after the payment of **Loss,** including **Costs of Defense,** covered under **INSURING AGREEMENTS** A and B of this Coverage Part, the Insurer will then pay such **Loss,** including **Costs of Defense,** covered under **INSURING AGREEMENT** C of this Coverage Part; and

4.    with respect to whatever amount of the Insurer's Limit of Liability under this Coverage Part remains after the payment of **Loss,** including **Costsof Defense,** covered under INSURING AGITEMENTSA, Band C of this Coverage Part, the Insurer will then pay such other **Loss,** including **Costs of Defense,** covered under this Coverage Part.

B.    Nothing in thisSection VIII is intended, nor shall it be construed, to increase the Insurer's m axim um aggregate Limit of Liability applicable to **Loss,** including **Costsof Defense,** under thisCoverage Part.

# Navigators Insurance Company

A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## GENERAL TERMS AND CONDITIONS

### THIS ISA CLAIMS-MADE POLICY
### WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABI UTY.
### PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form,** and subject to all terms, conditionsand limitations of this Policy, the **Insuredsand** the Insurer agree:

**Section I. Defense Obligations**

**A.**   If ITEM 3 of the Declarations states that the "Duty to Defend" option hasbeen elected, the Insurer will have the right and duty to defend any **aaim** against any **Insured** covered under this Policy, even if the allegations in such **aaim** are groundless, false or fraudulent. The Insurer will give consideration to the **Insureds'** preference for defense counsel, but the final decision regarding the appointment of defense counsel will rest with the Insurer. The Insuredswill have the right, at their own expense, to associate with the Insurer in the defense of any **aaim** and the negotiation of any settlement thereof.

**B.**   If ITEM 3 of the Declarations states that the "No Duty to Defend" option has been elected, the Insurer will have no duty to defend any **aaim** against any **Insured,** and it will be the duty of the **Insureds,** and not of the Insurer, to defend any **aaim**. The Insurer will have the right, but not the duty, to associate with the **Insureds** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply. The Insurer will advance **Costsof Defense** prior to the final disposition of any **aaim** covered by this Policy, on the condition that:

1.   any applicable retention shall have been satisfied;

2.   any amounts advanced by the Insurer will reduce the Insurer's applicable Limit of Liability under any applicable Coverage Part and under this Policy to the extent such amounts are not in fact repaid; and

3.   in the event it is finally established that the Insurer has no liability under the Policy for Lossin connection with such **Claim, the Insuredswill** repay the Insurer upon demand all **Costsof Defense** advanced to them or on their behalf.

**C.**   Whether the "Duty to Defend" or the "No Duty To Defend" option shall have been elected, **Costs of Defense** will be part of, and not in addition to, all applicable Um its of Liability set forth in ITEM 5 of the Declarations, and the Insurer's paym ent of **Costs of Defense** will reduce, and may exhaust, such Limit or Lim its of Liability.

**Section II. Definitions**

**A.**   **"aaim"** will mean:

1.   a written demand for monetary or non-monetary relief made against any **Insured;**

2.      any written request for any **Insured** to toll or waive any potentially applicable statute of limitations; or

3.      a civil, criminal, administrative or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar

pleading , the return of an indictment or criminal information, or the receipt or filing of notice of charges or similar document.

**B.**    **"Company"** will mean the **Corporation** and any **Subsidiary.**

**C.**    **"Corporation" will** mean the entity named in ITBv1 1 of the Declarations.

**D.**    **"Costs of Defense"** will mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim,** including the costs of an appeal bond, attachment bond or similar bond; provided, however, that the Insurer will have no obligation to apply for or furnish any such bond.

**E**     **"Executive Officer"** shall mean any past, present or future President, Chief Executive Officer or Chief Financial Officer of the **Company.**

**F.**    **"Financial Insolvency"** will mean any entity included within the term **"Company"** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such entity.

**G.**    **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

**H.**    **"Insured"** will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

**I.**    **"Insured Person"** will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

**J.**    **"Loss"** will mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and **Costs of Defense;** provided, however, that Loss will not include salaries, wages, overhead or benefit expenses associated with any **Insured,** criminal or civil fines or penalties imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

**K.**    **"Policy Period"** will mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in ITEM 2 of the Declarations, or to its earlier termination if applicable.

**L.**    "Proposal **Form"** will mean:

1.      the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith; and

2.      any applications or proposal forms submitted in connection with any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, together with any materials submitted therewith;

all of which will be retained on file by the Insurer and will be deemed to be physically attached to and form part of th is Policy.

M.     **"Related Wrongful Acts"** will mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision.

N.     **"Subsidiary"** will mean:

1.     any entity during any time in which the **Corporation** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or interests representing the present right to vote for the election or appointment of such entity's directors, managers, or persons occupying an equivalent position; and

2.     any joint venture during any time in which the **Corporation** owns, directly or indirectly, fifty percent (50%) or more of the outstanding securities or interests representing the present right to vote for the election or appointment of such entity's directors, managers, or persons occupying an equivalent position if, pursuant to a written agreement with the owners of such joint venture's remaining securities or interests, the **Corporation** solely controls the management and operations of such joint venture.

0.     **"Wrongful Act" will** have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

### Section III. Discovery—Coverage Extensions

A.     In the event the Insurer refuses to renew this Policy, the **Insureds** will have the right, upon payment of seventy five percent (75%) of the annual premium, (or if the **Policy Period is other than annual,** seventy five percent (75%) of the annualized premium), to an extension of the coverage provided by this Policy with **respect to any Claim** first made against any **Insured** during the period of twelve (12) months after the end of **the Policy Period** (the "Discovery Period"), but only with respect to **Wrongful Acts committed or attempted,** or allegedly committed or attempted, before the end of the **Policy Period.** As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid, and a written request together with payment of the appropriate premium for the Discovery Period must be provided to the Insurer no later than thirty (30) days after the end of the **Policy Period.** The purchase of the Discovery Period will not in any way increase any Limit of Liability, or create a separate or additional Limit of Liability, applicable to any Coverage Part or to this Policy as a whole, and the limits of liability with respect to **Claims** made during the Discovery Period will be part of, and not in addition to, the applicable Limit or Limits of liability as set forth in **ITEM 5 of the Declarations.**

B.     In the event of the death, incapacity or bankruptcy of any **Insured Person,** a **Claim** against such **Insured Person's** estate, heirs, legal representatives or assigns for a **Wrongful Act** committed or attempted, or allegedly committed or attempted, by such **Insured Person** will be deemed to be a **aaim** against such **Insured Person.**

C.     Subject to all other terms, conditions and limitations of and endorsements to this Policy, the coverage provided under this Policy to **Insured Persons will** be extended also to apply to the lawful spouses or domestic partners of the **Insured Persons;** provided, that the extension of coverage afforded under this Section III.0 will apply only to the extent any such spouse or domestic partner is a party to a **Claim** solely in his or her capacity as a spouse or domestic partner of an **Insured Person** and such **Claim** seeks damages recoverable from marital community property, property jointly held by an **Insured Person** and his or her spouse or domestic partner, or property transferred from an **Insured Person** to his or her spouse or domestic partner. No extension of coverage will be available under this Section III.0 for any Loss for which any spouse or domestic partner of an **Insured Person** may be liable by reason of his or her own actual or alleged acts, errors, omissions, misstatements, misleading statements or breaches of duty.

### Section IV. Limit of Liability

A.     With respect to each Coverage Part, t he Insurer will be liable to pay one hundred percent (100%) of

**Loss, including Costs of Defense,** in excess of the applicable retention amount set forth in ITEM 6 of the Declarations, up to the Limit of Liability applicable to such Coverage Part asset forth in ITEM 5 of the Declarations.

B.   The Insurer's maximum aggregate Limit of Liability under this Policy for all **Loss,** including **Costs of Defense,** will be the amount set forth in ITBV15.d of the Declarations, regardless of the number of **Insureds,** **the** number of **Claims, the** number of Coverage Parts, the tim e of payment or the Coverage Part or Coverage Parts under which such **Loss** is paid.

C.   If the Insurer's m aximum aggregate Limit of Liability with respect to any **aaim** isor has been exhausted by the payment of **Loss,** all obligations of the Insurer in connection with such **aaim** will be completely fulfilled and exhausted, and the Insurer will have no obligation to make any further paymentsof **Lossor** to advance any **Costsof Defense** in connection with such **Claim or** to defend or continue to defend such **aaim.** If the Insurer's maximum aggregate Limit of Liability under this Policy is exhausted by the payment of **Loss,** all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will thereafter have no obligation to make any further paymentsof **Loss,** to advance any **Costsof Defense** or to defend or continue to defend any **aaim;** under such circumstances, the entire premium for this Policy will be deemed to have been fully earned.

## Section V. Retention

A.   One retention shall apply to each and every **aaim.** If **a aaim** gives rise to coverage under more t han one Coverage Part, the retention applicable to **Loss** u nder each such Coverage Part will be applied separately to that Losspayable under such Coverage Part; provided, however, that the sum of all such retentions will not exceed the largest single retention applicable to such **Claim** under any applicable Coverage Part. The retention amount will be borne by the Insuredsuninsured at their own risk.

B.   No retention will apply to **Loss** incu rred by any **Insured Person** for which the **Company** is neither required nor permitted to provide advancement or indemnification, or for which the **Company** is required or permitted to provide advancement or indemnification but is unable to do so solely by reason of its **Financial Insolvency.**

## Section VI. Allocation, Costsof Defense and Settlements

A.   If **a Claim** made against any **Insured** includes bot h covered and uncovered matters, or is made against any **Insured** and others, t he **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such aaim. The **Insureds** and the Insurer will use their best efforts to agree upon a fair and proper allocation. If no agreement can be reached, the Insurer will advance **Costs of Defense** based on what it believes is a fair and proper allocation until such time ast he issue can be resolved.

B.   The **Insuredsm ay** not incur **Costsof Defense,** or admit liability, offer to settle, or agree to any settlement in connection with any aaim without the express prior written consent of the Insurer, which consent shall not be unreasonably withheld. The Insurer will not be liable for any admission, assumption or stipulation of liability, settlement or **Costs of Defense** to which it has not consented.

## Section VII. Notice

A.   As acondition precedent to their rights under this Policy in connection with any **aaim,** the **Insuredsm** ust give the Insurer written notice of such **aaim** as soon as practicable after such **Claim** is made, but in no event later than sixty (60)days after the end of the **Policy Period.** Subject to the foregoing, written notice of **a Claim** will be deemed to have been given as soon as practicable if such notice isgiven not later than sixty (60) days after the Chairman of the Board of Directors, President, Chief Executive Officer, Chief Financial Officer, General Counsel, or Fisk Manager of the **Company** first becomes aware of such **Claim.**

B.     If ,during the **Policy Period** or Discovery Period, any **Insured** first becomes aware of any circumstances
       which may reasonably be expected to give rise to a Claim being made against an **Insured** and shall give written
       notice to the Insurer of:

1.        the circumstances;

2.        the **Wrongful Act** allegations anticipated; and

3.        the reasons for anticipating such a **Claim;**

with full particulars as to the dates, persons and entities involved, then a **aaim** which is subsequently made
against such Insured and reported to the Insurer alleging, arising out of, based upon or attributable to such
circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful**

**Act** alleged or contained in such circumstances, shall be considered made at the time the Insurer received such written
notice.

C.     Notice to the Insurer under Sections VILA and B above must be given to:

> Navigators Insurance Company
> One Penn Plaza
> New York, NY 10119
> ATTN: Navigators Pro Claims Department

## Section VIII. General Conditions

**A.       Worldwide Coverage**

The coverage provided by this Policy will apply to Claimsm ade, and to **Wrongful** Actscomm itted or attempted
or allegedly committed or attempted, anywhere in the world.

**B.       Interrelationship of Claims**

All Claimsinvolving the same **Wrongful Act** or **Related Wrongful Actsof** one or more **Insuredswill** be
considered a single **Claim,** and will be deemed to have been made on the earlier of the following dates: (1) the
earliest date on which any such **Claim** wasfirst made; or (2) the earliest date on which any such **Wrongful Act**
or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

**C.       Advancement and Indemnification**

The certificate of incorporation, charter or other organizational documents of each entity included within
the term **"Company,"** including by-lawsand resolutions, will be deemed to require advancement and
indemnification of **Lossto the Insured Personsto** the fullest extent permitted by law.

**D.       Other Insurance**

All Losspayable under this Policy will be specifically excess of, and will not contribute with, any other
valid and collectible insurance, including but not limited to any other insurance under which there isa duty to defend,
unlesssuch other insurance isspecifically excess of this Policy. This Policy will not be subject to the terms of any other
insurance policy or program.

E       **Cancellation or Non-Renewal**

    1.    This Policy may be cancelled by the **Corporation** at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium. Return or tender of any unearned premium will not be acondition of cancellation. This Policy may be cancelled by the Insurer only for non-payment of premium;

    2.    The Insurer will not be required to renew this Policy. If the Insurer elects not to renew this Policy, the Insurer will provide the **Corporation** with no lessthan sixty (60) days advance notice thereof. An offer by the Insurer to renew on different terms will not constitute non-renewal.

**F.**       **Representationsand Severability**

It isagreed by the **Insureds** that the particularsand statements contained in the **Proposal Form** and any information provided therewith (which shall be on file w ith the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting apart of this Policy. It isfurther agreed by the **Insuredsthat** the statements in the **Proposal Forms** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the actual intent to deceive, or contains m isrepresentations which materially affect either the acceptance of the risk or the hazard assumed by

Underwriters under this Policy, this Policy shall be void and have no effect whatsoever with respect to those **Insureds who** made or had knowledge of such misrepresentations. Knowledge of any matter which may give rise to aclaim or any misrepresentation made by an **Executive Officer** shall be imputed to the **Company,** but will not be imputed to any **Insured Person** who had no knowledge of the matter which may give rise to aclaim or the misrepresentation.

**G.**       **Changes in Exposure**

    1.    If, during the **Policy Period,** the **Company** acquiresthe assets of another entity or acquires a **Subsidiary** or any other entity, by merger, consolidation or otherwise, the coverage afforded under this Policy will be available for **Loss** resulting from **Claims** made during the **Policy Period** or, if purchased, the Discovery Period, against any such entity or any **Insured Persons** t hereof for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, by them after the effective date and time of such acquisition. If, however, such assets or the assets of the entity so acquired exceed twenty-five percent (25%) of the total assets of the **Company** as of the date of the most recently audited financial statements of the **Company** or the number of employeesof the entity so acquired exceeds twenty-five percent (25%) of the number of the **Company's** employees as of the date of the most recently audited financial statements of the **Company,** such coverage will be available only for ninety (90) days after the effective date and time of such acquisition or until the end of the **Policy Period,** whichever is earlier, unlesswritten notice of such acquisition is given to the Insurer, together with such additional information as the Insurer may request, and the Insurer agreesby written endorsement to this Policy to provide such additional coverage on such terms, conditionsand limitations, and for such additional premium, as the Insurer may require. If, however, this Policy contains a Fiduciary Liability Coverage Part, t his Section VIII.G.1 will not apply to or operate to extend coverage under such Coverage Part unless the Insurer so agreesby written endorsement to such Coverage Part;

2.  If, during the **Policy Period,** any entity ceases to be a **Subsidiary,** the coverage afforded under this Policy in respect of such entity and any **Insuredsthereof** by reason of their service with or relationship to such entity will continue to apply to aaimsmade during the Policy Period or, if purchased, the Discovery Period, against them for **Wrongful** Actscommitted or attempted, or allegedly committed or attempted, by them before such entity ceases to be a **Subsidiary,** but such coverage will cease with respect to **Claims** against any such entity or any such **Insureds** for **Wrongful Actscommitted** or attempted, or allegedly committed or attempted, by them after such entity ceases to be a **Subsidiary;**

3.  If, during the **Policy Period,** a transaction occurs wherein another person, entity, or group of affiliated persons and/or entities gains control of the **Corporation** through the ownership of more than fifty percent (50%) of the voting stock of the **Corporation,** or the **Corporation** merges into another entity or consolidates with another entity such that the **Corporation** is not the surviving entity, the coverage afforded under this Policy will continue to apply to **Claims** made during the **Policy Period** or, if purchased, the Discovery Period, against any **Insured** for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, before the effective date of such transaction, but coverage will cease with respect to **Claims** against the **Insureds** for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, thereafter. Under such circumstances, the **Insureds** may no longer cancel the Policy and the entire premium for this Policy will be deemed to have been fully earned as of the effective date of such transaction.

## H.  Ouotesfor Securities Offerings

If, ,during the **Policy Period,** any public offering of the **Company's** securities occurs that is not exempt from registration under the Securities Act of 1933 and, at least thirty (30) days prior to the effective date of such offering, the Insuredsgive the Insurer written notice thereof together with all information related thereto as the Insurer may request, the Insurer agrees to give the **Insuredsa** quote for coverage with respect to such offering; provided, that such quote will be on such terms and conditions, and for such additional premium, asthe Insurer in its sole and absolute discretion shall deem appropriate, and any coverage provided will be on such forms as are in use by the Insurer for public com panies at the time of such offering. In the event of an Initial Public Offering of the **Company'ssecurities,** if the **Insureds**

choose to cancel this Policy and purchase a replacement Policy from the Insurer, this Policy will be cancelled and premium returned on a pro-rata basis.

## I.  Assistance, Cooperation and Subrogation

1.  The Insuredsagree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and to do nothing which would in any way increase the Insurer's exposure under this Policy or prejudice the Insurer'sactual or potential rights of recovery;

2.  In the event of a Claim, the **Insureds** shall, as soon aspracticable, furnish the Insurer with copies of reports, investigations, pleadings and other papers in connection therewith;

3.  In the event of any payment under this Policy, the Insurer will be subrogated to all of the **Insureds'** rights of recovery and the **Insureds** will execute all papers required and do everything that may be necessary to secure such rights, including the execution of such documents as m ay be necessary to enable the Insurer to effectively bring suit in the name of any Insured.

**J.**     **Assignment**

Assignment of interest under this Policy will not bind the Insurer until its consent is endorsed hereon.

K        **Conformity to Statute**

Any term s of this Policy which are in conflict with the terms of any applicable law s are hereby amended to conform to such laws.

L        **No Action Against the Insurer**

1.       No action shall betaken against the Insurer unless, as acondition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insureds'** obligation to pay
shall have been finally determined by an adjudication against the **Insureds** or by written agreement of the **Insureds,** the claimant or claimantsand the Insurer;

2.       No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds;** nor may the Insurer be im pleaded by any **Insured** or such **Insured's** leg al representative in any such **Claim.**

**M.**    **Corporation Represents Insureds**

By acceptance of this Policy, the **Corporation** isdesignated to act on behalf of the **Insureds for** all purposes under this Policy, including but not limited to the giving and receiving of all noticesand correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.**    **Bankruptcy or Insolvency**

No bankruptcy or insolvency of any **Insured** will relieve the Insurer of any of its obligations under this Policy.

**0.**    **Application of Coverage Parts**

All Coverage Parts are subject to these GENERAL TERMS AND CONDITIONS. Except as stated in these GENERAL TERMSAND CONDITIONSor unless specifically stated otherwise in any Coverage Part or endorsement, the provisionsof each Coverage Part will apply only to that Coverage Part and will in no way limit, increase or affect the coverage afforded under any other Coverage Part. If any provision in these GENERAL TERASAND CONDITIONS is inconsistent or in conflict with the term sand conditions of any Coverage Part, the terms and conditions of that Coverage Part will control for the purposesthereof.

**P.**    **OFAC Disdosure**

The Office of Foreign Assets Control ("OFAC") administers and enforces U.S. sanctions policy, based on Presidential declarations of "national emergency." OFAC has identified and listed n um erousf oreig n agents, front organizations, terrorists, terrorist organizations and narcotics t raffickers as "Specially Designated Nationals and Blocked Persons"; this list can be located on the website for the United States Department of the Treasury (www.treas.gov/ofac). In accordance with OFAC regulations, if it is determ ined that any **Insured,** or any person or entity claiming the benefitsof this insurance, hasviolated U.S. sanctions law or is a Specially Designated Nationals and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitationson premium sand payment may also apply.

**0.** **Headings**

The headings of the various sections of this Policy are intended for reference only and are not to form part of the terms and conditions of coverage.

**R** **Entire Agreement**

By acceptance of this Policy, the **Insureds agree** that this Policy (including the Declarations, the **Proposal Form** and the Coverage Parts specified in ITEM 4 of the Declarations), and any written endorsements attached hereto constitute the entire agreement between the parties relating to this insurance. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**ENDORSEMENT NO.: 1**

**This endorsement, effective 12:01 am, April 1, 2017**

**Forms part of policy number: CH1'7DOL329598IV**

**Issued to: Tarter Farm & Ranch Equipment**

**By: Navigators Insurance Company**

## OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

ENDORSEMENT NO.: 2

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## KENTUCKY AMENDATORY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Section VIII. General Conditions, E. Cancellation or Non-Renewal** of the General Terms and Conditions is deleted and replaced with the following:

**E.      Cancellation or** Non-Renewal

1.      Cancellation

   a.      The **Corporation** shown in the Declarations may cancel this Policy by mailing or delivering to the Insurer advance written notice of cancellation.

   b.      The Insurer may cancel this Policy by mailing or delivering to the **Corporation** written notice of cancellation, stating the reason for cancellation, at least 14 days before the effective date of cancellation. The Insurer may cancel this policy for one or more of the following reasons:

      (1)      Nonpayment of premium;

      (2)      A determination by the commissioner that the continuation of the Policy would place the Insurer in violation of the Kentucky insurance code or regulations of the commissioner.

   c.      The Insured may not cancel the policy for any reason other than the reasons described in Paragraph b above.

   d.      If the Insurer cancels this Policy based on paragraph c. above, the Insurer will mail or deliver a written notice of cancellation to the **Corporation's** last known mailing address, stating the reason for cancellation, at least:

      (1)      14 days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

ENDORSEMENT NO.: 2

    (2)    75 days before the effective date of cancellation, if cancellation is due to a determination by the Commissioner that the continuation of the Policy would place the Insurer in violation of the Kentucky insurance code or regulations of the commissioner.

    The notice of cancellation will state the effective date of cancellation. The Policy **Period** will end on that date.

    e.    If this Policy is cancelled, the Insurer will send the Corporation any premium refund due. If the Insurer cancels, the refund will be pro rata. If the **Corporation** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

2.    Non-renewal

    a.    For the purpose of this Condition:

    ( I )    Any Policy Period or term of less than 6 months shall be considered to be a Policy Period or term of six months; and

    (2)    Any **Policy Period** or term of more than 1 year or any Policy with no fixed expiration date shall be considered a **Policy Period** or term of 1 year.

    b.    If the Insurer elects not to renew this Policy, the Insurer will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the **Corporation** shown in the Declarations, at the last mailing address known to the Insurer, at least 75 days before the expiration date of the **Policy Period.**

    c.    If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing **Policy Period** upon payment of the appropriate premium until the **Corporation** has accepted replacement coverage with another insurer or until the **Corporation** has agreed to the nonrenewal.

    d.    If the Insurer mails or delivers a renewal notice to the **Corporation** at least 30 days before the end of the **Policy Period,** stating the renewal premium and its due date, the Policy will terminate without further notice unless the renewal premium is received by the Insurer or their authorized agent by the due date.

    e.    If this Policy terminates because the renewal premium has not been received by the due date, the Insurer will, within 15 days, mail or deliver to the **Corporation** at the last known address a notice that the Policy was not renewed and the date it was terminated.



ENDORSEMENT NO.: 2

   f.  If notice is mailed, proof of mailing is sufficient proof of notice.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 3

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

### STATE AMENDATORY INCONSISTENCY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby agreed and understood that **Section VIII. General Conditions;** is amended by adding the following,

>    State Amendatory Inconsistency
>
>    In consideration of the premium charged, it is hereby understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law and the public policy of the state of domicile, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the policy which are more favorable to the **Insured.**

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 4**

This endorsement, effective **12:01 am, April 1, 2017**

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

RELIANCE ON ANOTHER INSURER'S APPLICATION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed the following paragraph is added to **SECTION VIII. General** Conditions, paragraph **F. Representations and Severability:**

Any application scheduled below is hereby made a part of the Policy and shall operate as if it is a Navigators Management Company application, even if such application was completed for another insurer.

APPLICATION: Chubb ForeFront Portfolio application signed and dated January 16, 2017.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 5**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**SPECIFIC INDIVIDUAL EXCLUSION**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section III, Exclusions,** of the Directors and Officers Coverage Part of the Policy shall be amended by adding the following:

that part of any **Claim** which is brought or maintained by or on behalf of any of the following individuals, including his/her estate, any beneficiary of his/her estate, or assignee, trustee or receiver thereof:

Neil Duggins
LuAnn Tarter Coffey
Doug Tarter

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 6

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH17DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMENDED SECTION VI., INVESTIGATION AND SETTLEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

It is understood and agreed that **Section VI. Investigation and Settlement** of **the Employment Practices Liability Coverage Part** is deleted and replaced by the following:

The Insurer shall have the right but not the obligation to make any investigation it deems expedient and with the consent of the **Insureds** against whom the **Claim** has been made or the **Company** on behalf of the **Insureds,** make settlement within the available Limit of Liability applicable to this Coverage Part (whether above or below the applicable Retention).

If the **Insureds** shall unreasonably withhold or refuse to consent to any settlement or compromise recommended by the Insurer and acceptable to the claimant and elects to contest the **Claim,** the Insurer's liability for any **Loss** shall not exceed: (1) the amount for which the Insurer could have settled such **Claim** plus **Costs of Defense** incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Amount") plus (2) ninety percent (90%) of covered **Loss** in excess of such Settlement Amount, it being a condition of this Policy that the remaining ten percent (10%) of such **Loss** excess of the Settlement Amount shall be carried by the **Insured** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Amount exceeds the Retention amount stated in **ITEM 6 Retentions** of the **Declarations Page.**

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 7

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH17DOL329598IV

Lssued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company


AMEND SECTION VIII. CHANGES IN EXPOSURE, G1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that **Section VIII. Changes in Exposure, G.1., of the General Terms and Conditions,** is amended as follows:

"twenty-five percent (25%) of the total assets" is deleted in its entirety and replaced with "thirty-five percent (35%) of the total assets".




All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 8

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND SECTION VI. ALLOCATION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the **General Terms and Conditions Coverage Part, Section VI. Allocation, Costs of Defense and Settlements,** has been amended by adding the following:

C.      Solely with respect to all Liability Coverage Parts:

If **Loss** is incurred that is partially covered and partially not covered by this Policy, either because a **Claim** made against the **Insureds** includes both covered and uncovered matters or because a **Claim** is made against both covered and uncovered parties, such **Loss** shall be allocated as follows:

(1)      100% of Costs of Defense shall be allocated to covered **Loss;** and

(2)      Loss other than **Costs of Defense** shall be allocated between covered and non covered Loss based upon the relative legal exposure of the parties to such matters.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 9

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND SECTION II., B. EMPLOYEE, 4**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that **Section II. Definitions, B., "Employee" 4.,** of the **Employment Practices Liability Coverage Part,** is deleted in its entirety and replaced with the following:

4.      any individual contracted to perform work for the **Company** or who is an independent contractor for the **Company,** provided they are indemnified by the Company.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 10

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**DELETE SECTION III. B 4**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that **Section III., Exclusions, B. 4,** of the **Directors and Officers** Coverage **Part,** is deleted in its entirety.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 11

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## NON RESCINDABLE ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that the Policy, is amended by adding the following:

It is understood and agreed that this Policy may not be rescinded.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 12

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

### ADDITIONAL LIMIT FOR DEFENSE FOR EPL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby agreed and understood

Solely with respect to the Employment Practices Liability Coverage Part, in addition to the maximum aggregate limit of liability set forth in Item 5(b) of the Declarations, an additional $1,000,000 in the aggregate will be available for all Claims under that coverage part, but for **Costs of Defense** only. This additional limit will not be applicable to any other **Loss.** The Insurer's total liability for all **Loss** under this policy shall not exceed the amount stated in Item 5(d) of the Declarations plus $1,000,000.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 13

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

AMEND SECTION VIII. GENERAL TERMS AND CONDITIONS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the **GENERAL TERMS AND CONDITIONS, Section VIII. General Conditions, I. Assistance, Cooperation and Subrogation** has been amended by adding the following:

4.    In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured Person** under this **Policy** unless there is a final adjudication against such **Insured Person** of deliberately fraudulent or deliberately criminal act, error or omission, or a final adjudication against such **Insured Person** of profit remuneration or financial advantage obtained by such **Insured Person** as to which he or she was not legally entitled.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 14

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND DEFINITION OF CLAIM

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section II, Definitions A., "Claim"** in the General Terms and Conditions Section is deleted in its entirety and replaced with the following:

A.   "Claim" will mean:

   I.   a written demand for monetary or non-monetary relief made against any Insured;

   2.   any written request for any Insured to toll or waive any potentially applicable statute of limitations;

   3.   a civil, criminal, administrative or arbitration proceeding brought against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment or criminal information, or the receipt or filing of notice of charges or similar document; or

   4.   a regulatory proceeding brought against any Insured seeking monetary or non-monetary relief and commenced by a written notice of such proceeding.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 15

This endorsement, effective 12:01 am, April 1, 2017

Forms **part of policy number: CH1'7D01,329598IV**

Issued to: **Tarter Farm & Ranch** Equipment

By: Navigators Insurance Company

## CRISIS COMMUNICATION MANAGEMENT INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ **IT** CAREFULLY.

In consideration of the premium charged, it is agreed that this Policy is amended to provide Crisis Management Coverage pursuant to the terms and conditions set forth below:

1)    DIRECTORS AND OFFICERS LIABILITY COVERAGE PART SECTION I., INSURING AGREEMENTS, is amended to add the following new insuring agreement:

(E) CRISIS MANAGEMENT COVERAGE

This Policy shall pay the **Crisis Management Loss** of the **Company** arising from a **Crisis Management Event** first commencing during the **Policy Period,** up to the amount of the **Crisis Management Fund.**

2)    DIRECTORS AND OFFICERS LIABILITY COVERAGE PART SECTION **III.,** EXCLUSIONS, shall not be applicable to **Crisis Management Loss.**

3)    GENERAL TERMS AND CONDITIONS SECTION IV., LIMIT OF LIABILITY, is amended to add the following:

(D) The limit of the Insurer's liability for **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period,** in the aggregate, shall be the amount set forth as the **Crisis Management Fund.** This limit shall be the maximum limit of the Insurer under this Policy regardless of the number of **Crisis Management Events** occurring during the **Policy Period,** provided, however that this single **Crisis Management Event(s)** limit shall be part of and not in addition to the Limit of Liability set forth in Item 5. LIMIT OF LIABILITY (inclusive of **Costs of Defense)",** of the Declarations, which shall in all events be the maximum liability of the Insurer for all **Loss** under this Policy.

There shall be no Retention amount applicable to Crisis **Management Loss,** and the Insurer shall pay such **Crisis Management Loss** from first dollar subject to the other terms and conditions of this endorsement.

**ENDORSEMENT NO.: 15**

An actual or anticipated **Crisis Management Event** shall be reported to the Insurer as soon as practicable but in no event later than thirty (30) days after the **Company** first incurs **Crisis Management Loss** for which coverage will be requested under this endorsement.

4)     GENERAL TERMS AND CONDITIONS SECTION VI., ALLOCATION, COSTS OF DEFENSE AND SETTLEMENTS, shall have no applicability to **Crisis Management Events.** There shall be no requirement for the **Company** to obtain prior written approval of the Insurer before incurring any **Crisis Management Loss,** provided that the **Crisis Management Firm** selected by the **Company** to perform the **Crisis Management Services** has been approved by the Insurer.

For **the purposes of this endorsement, the following definitions** shall apply:

A)     **"Material Effect on the Company's Common Stock Price"** shall mean, within a period of 24 hours, that the price per share of the **Company's** common stock shall decrease by the greater of $n/a per share or n/a% net of the change in the Standard & Poor's Composite Index

B)     **"Crisis Management Event"** shall mean:

I.     One of the following events which, in the good faith opinion of the Chief Financial Officer of the **Company** did cause, or is reasonably likely to cause **a Material Effect on the Company's Common Stock Price:**

(1)     <u>Negative earnings or sales announcement</u>

The public announcement of the **Company's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) the **Company's** prior year's earnings or sales for the same period; (ii) the **Company's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of the **Company's** earnings or sales.

(2)     <u>Loss of a patent, trademark or copyright or major customer or contract</u>

The public announcement of an unforeseen loss of: (i) the **Company's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of the **Company;** or (iii) a major contract with the **Company.**

(3)     <u>Product recall or delay</u>

The public announcement of the recall of a major product of the Company or the unforeseen delay in the production of a major product of the Company.

ENDORSEMENT NO.: 15

(4)  <u>Mass tort</u>

The public announcement or accusation that the **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of the use thereof.

**(5)**  **<u>Employee layoffs or loss of key executive officer(s)</u>**

The public announcement of employee layoffs, or the death or resignation of one or more key executive officer(s) of the **Company.**

**(6)**  **<u>Restatement of financial statement</u>**

The public announcement of a restatement of the **Company's** previously filed financial statements.

**(7)**  **<u>Elimination or</u>** suspension of dividend

The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by the **Company.**

**(8)**  **<u>Write-off of assets</u>**

The public announcement that the **Company** intends to write-off a material amount of its assets.

(9)  Debt restructuring or default

The public announcement that the **Company** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

**(10)Bankruptcy**

The public announcement that the **Company** intends to file for bankruptcy protection, or a third party is seeking to file for involuntary bankruptcy on behalf of the **Company,** or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

**(11)<u>Governmental or regulatory litigation</u>**

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against the **Company.**

ENDORSEMENT NO.: 15

(12) ther

Any other event previously consented to by the Insurer which, in the good faith opinion of the Chief Financial Officer of the **Company,** did cause or is reasonably likely to cause, a **Material Effect on the Company's Common Stock Price,** but only if such event is specifically scheduled by written endorsement to the Policy.

II.   Unsolicited takeover bid

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured,** whether publicly announced or privately made to a director or executive officer of the **Company,** to effect (a) a consolidation with or merger into, or sale of all or substantially all of the **Company's** assets to any other person or entity or group of persons and/or entities acting in concert; or (b) the acquisition by any person or entity or group of persons and/or entities acting in concert of an amount of the outstanding ownership interests of the **Company** representing more than n/a% of the voting or designation power for the election of **Directors** or **Officers** of the **Company,** or the acquisition by such persons and/or entities of the voting or designation rights of such an amount of such ownership interests.

Provided, however, that the term **Crisis Management Event** shall not include any event relating to:

(1)   any **Claim(s)** or **Wrongful** Act(s) which have been reported, or any circumstances of which notice has been given, under any policy the term of which incepted prior to the Inception Date of this Policy;

(2)   any demand, suit, or other proceeding pending on or existing prior to the applicable Prior Litigation Date set forth in Item 7. of the Declarations, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding;

(3)   the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, the foregoing shall not apply if the Policy contains any endorsement modifying or deleting, in part or in whole, Section **III.** A.9 in the Directors and Officers Liability Coverage Part, Section **III. A.11** in the Employment Practices Liability Coverage Part, or Section III. A.3 in the Fiduciary Liability Coverage Part of the Policy; or

## ENDORSEMENT NO.: 15

(4) the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis Management Event(s)** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

For purposes of this endorsement, a **Crisis Management Event** shall first commence when the **Company** or any of its **Directors** or **Executive Officers** shall first become aware of the event and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

C)   **"Crisis Management Firm"** shall mean any public relations firm, crisis management firm or law firm hired by the **Company** or its **Directors, Officers** or employees to perform **Crisis Management Services** in connection with the **Crisis Management Event** which has been consented to by the Insurer, the consent for which shall not be unreasonably withheld.

D)   **"Crisis Management Fund"** shall mean $25,000.

E)   **"Crisis Management Loss"** shall mean the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event,** regardless of whether a **Claim** is ever made against an **Insured** arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim:**

(1)   Amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event(s); and**

(2)   Amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Directors, Officers,** employees or agents of the **Company** or the **Crisis Management Firm,** in connection with the **Crisis Management Event(s).**

F)   **"Crisis Management Services"** means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its **Directors** and **Officers** or employees on minimizing potential harm to the **Company** arising from the **Crisis Management Event,** including but not limited to maintaining and restoring investor confidence in the **Company.**

**ENDORSEMENT NO.: 15**

Nothing in this endorsement shall be construed to increase the **Crisis Management Fund** described in this endorsement which shall remain the maximum liability of the Insurer for all **Crisis** Management **Loss** under this endorsement.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 16

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**PRO RATA CANCELLATION IN THE EVENT OF AN IPO**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section VIII., General Conditions, E. Cancellation or Non-Renewal,** of the **General Terms and Conditions Coverage Part,** is amended with the addition of the following:

3.   In the event of an Initial Public Offering the **Company** may cancel this Policy and the Insurer shall retain the pro-rated proportion of the premium calculated as of the effective date of such cancellation.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 17

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

### AMEND DEFINITION OF PROPOSAL FORM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby agreed and understood that the **Section II. Definitions, L. "Proposal Form",** of the **General Terms and Conditions Coverage Part** is amended with the addition of the following:

This shall only apply for the 12 months prior to the inception of the Policy.

All other terms and conditions of this Policy remain unchanged.

NAV-PDL-680 (9/08)                                                                                              Page 1 of 1

ENDORSEMENT NO.: 18

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND INSURED VS. INSURED**
**(Claims brought by former Directors & Officers)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is hereby understood and agreed that the **Directors and Officers Liability Coverage Part, Section III. Exclusions, A. 8D.,** is deleted in its entirety and replaced with the following:

**D.**  brought by any **Insured Person** who has neither served in such capacity nor as consultant to any entity included within the term **"Company"** for at least two (2) years prior to such **Claim** having been first made.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 19

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND INSURED VS. INSURED EXCLUSION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that **Section III. Exclusions, A. 8.,** of the **Directors and Officers Liability Coverage Part,** is amended by adding the following:

      (g)      brought by an **Employee** where they are not named as a co-defendant with the **Company.**

It is also understood and agreed that **Employee** will be defined as it is in the Employment Practices **Liability Coverage Part.**

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 20

This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND SECTION II, DEFINITIONS B.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the **GENERAL TERMS AND CONDITIONS, Section II.** Definitions, **B.** is deleted and replaced with the following:

B.   **"Company"** shall mean:

(1)   the **Corporation** and any **Subsidiary;** and

(2)   in the event of **Financial Insolvency,** the resulting debtor-in-possession (or equivalent status outside the United States), if any. Such coverage shall be subject to all terms, conditions, limits or restrictions of coverage contained in or endorsed into this policy.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 21

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND SECTION VII. NOTICE A

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section VII., Notice, A.,** of the **General Terms and Conditions** Coverage Part . is deleted in its entirety and replaced with the following:

A. The **Insureds** shall, as a precedent to their rights under this Policy, give the Insurer notice in writing of any **Claim** which is first made during the **Policy Period** as soon as practicable after the President, Chief Executive Officer, or Chief Financial Officer of the **Company,** or their equivalent becomes aware of such **Claim,** but in no event later than 90 days after the end of the **Policy Period.**

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 22**

This endorsement, effective **12:01 am, April 1, 2017**

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND DISCOVERY**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **General Terms and Conditions, Section III., Discovery -** Coverage Extensions, A., is deleted in its entirety and replaced with the following:

**Section III. Discovery - Coverage Extensions**

**A.** In the event the Insurer refuses to renew this Policy or the **Corporation** chooses to cancel or not renew this policy, the **Corporation** will have the right, upon payment of 75%, 100%, or 125% of the annual premium, (or if the **Policy Period** is other than annual, 75%, 100%, or 125% of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months, twenty-four (24) months, or thirty-six (36) months, respectively, after the end of the **Policy Period** (the "Discovery Period"), but only with respect to **Wrongful Acts** committed or attempted, or allegedly committed or attempted, before the end of the **Policy Period.** As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid, and a written request together with payment of the appropriate premium for the Discovery Period must be provided to the Insurer no later than ninety (90) days after the end of the **Policy Period.** The purchase of the Discovery Period will not in any way increase any Limit of Liability, or create a separate or additional Limit of Liability, applicable to any Coverage Part or to this Policy as a whole, and the limits of liability with respect to **Claims** made during the Discovery Period will be part of, and not in addition to, the applicable Limit or Limits of liability as set forth in ITEM 5 of the Declarations.

ENDORSEMENT NO.: 22

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 23**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND DEFINITION OF CLAIM**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section II, Definitions A., "Claim"** in the General Terms and Conditions section is deleted in its entirety and replaced with the following:

**A.    "Claim"** will mean:

1.   a written demand for monetary or non-monetary relief made against any **Insured;**

2.   any written request for any **Insured** to toll or waive any potentially applicable statute of limitations; or

3.   any formal or informal investigation, or civil, criminal, administrative, regulatory, or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment or criminal information, or the receipt or filing of notice of charges or similar document; or

4.   a regulatory proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by a written notice of such proceeding.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 24**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND SECTION II.
DEFINITIONS E.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that **Section IL Definitions, E.** of the **Directors and Officers Coverage Part,** is deleted and amended as follows:

**E.**      For purposes of this Coverage Part, the term **"Insured Person"** will mean:

1.      any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company;**

2.      any in-house general counsel of the **Company;**

3.      any executive of the **Company** located outside of the United States of America who holds a position with respect to the **Company** equivalent to any position described in Sections II.C.1 or II.C.2 above;

4.      any **Employee;** or

5.      any member of the advisory board of the **Company.**

ENDORSEMENT NO.: 24

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 25**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND** SECTION III.
EXCLUSIONS A, 6.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that **Section IIL Exclusions, A, 6.,** of the **Employment Practices Liability Coverage Part,** is deleted and amended as follows:

6. for recovery of any amounts owing under, or assumed by any **Insured** pursuant to, any contract with an independent contractor, express contract of employment or any express obligation to make payments in the event of a termination of employment; provided, that this exclusion will not apply to:

(1) liability which an **Insured** would have **had** in the absence of such express contract or obligation; or

**(2) Cost of Defense**

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 26

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

AMEND SECTION **III.** EXCLUSIONS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Section III. Exclusions, A., 4.** of the **Employment** Practices **Liability Coverage Part,** is deleted and replaced with the following:

4.    for any actual or alleged;

      a.    bodily injury, sickness, disease or death of any person (other than employment related mental anguish, emotional distress or humiliation); or

      .    damage to or destruction of any tangible property, including the loss of use thereof;

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 27**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**OTHER INSURANCE CLAUSE**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The other insurance clause of the Policy is enhanced by providing primary Employment Practices Liability coverage in all cases as follows:

**Section VIII. General Conditions, D. Other** Insurance of the General Terms and **Conditions** Section is amended by adding the following:

> Solely with respect to the **Employment Practices Liability Coverage Part,** this Policy shall in all cases act as primary insurance, provided that with respect to that portion of any **Claim** made against any leased or temporary employee or independent contractor, **Loss,** including **Defense Costs,** payable on behalf of such leased or temporary employee or independent contractor under this Coverage Section shall be excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 28**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**WORKPLACE BULLYING**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The definition of **Wrongful Act** in the **Employment Practices Liability** Coverage Part is enhanced by adding workplace bullying as follows:

**Section IL Definitions, G. "Wrongful Ace", 1.b** of the **Employment Practices Liability Coverage Part** is deleted in its entirety and replaced with the following:

      b.     sexual or other workplace harassment, including workplace bullying, quid pro quo and hostile work environment;

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 29

This endorsement, effective **12:01 am, April 1, 2017**

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

## AMEND DEFINITION OF "LOSS"

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The definition of **"Loss"** of the **Directors and Officers Liability Coverage Part** is enhanced to include Extradition Costs, Foreign Corrupt Practice Act Penalties, Section 15 of the Securities Act of 1933, and Personal Asset Protection as follows:

For purposes of this Coverage Part, **"Loss"** will also include pre- and post-judgment interest, and if it is stated in ITEM 4. of the Declarations that Optional Investigation Costs Coverage has been purchased, **Investigation Costs, "Loss"** will also include **Extradition Costs, Foreign Corrupt Practice Act Penalties** and **Personal Asset Protection Costs. "Loss"** shall not include any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of the **Company's** securities.

With respect to any **Claim** arising out of any Public or Private Offering of Securities of the **Company,** the Insurer shall not assert that the portion of any settlement and/or **Costs of Defense** of that **Claim** which relates to any alleged violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, constitutes uninsurable loss and shall treat that portion of such settlement and/or **Cost of Defense** as constituting **Loss** under the Policy.

**"Extradition Costs"** will mean the reasonable and necessary costs and expenses incurred through legal counsel and consented to by the Insurer, resulting from an **Insured Person** lawfully: (a) opposing, challenging, resisting or defending against any order or request for or effort to obtain by means of any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise answer any criminal accusation, (b) any appeal arising from such an order or request.

ENDORSEMENT NO.: 29

**"Foreign Corrupt Practice Act Penalties"** will mean the multiplied damages and civil penalties assessed against any **Insured Person** pursuant to section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 USC 78dd - 2(g)(2)(B) subject to the other terms, conditions and exclusions of the Policy including, but not limited to, Exclusion A.1 of this **Directors and Officers Coverage Part.**

**"Personal Asset Protection Costs"** will mean the reasonable and necessary fees, costs and expenses consented to by the Insurer and incurred by an **Executive Officer** to oppose any efforts by an **Enforcement Authority** to seize or otherwise enjoin the personal assets or real estate property of such **Executive Officer** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**"Enforcement Authority"** shall mean any federal, state, local bar and foreign law enforcement authority or other governmental investigative authority, including self-regulatory organizations.

Further, the definition of **"Loss"** of the **Employment Practices** Liability Coverage Part is enhanced to include pre and post judgment interest as follows:

**Section II. Definitions, E.** of the **Employment Practices Liability** Coverage Part, is deleted in its entirely and replaced with the following:

E.   For purposes of this Coverage Part, the term **"Loss"** will include pre- and post- judgment interest, awards of front pay and back pay, and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, but **Loss** will not include:

any costs associated with the modification of any building or property to provide any reasonable accommodations required by or made as a result of or to conform with the requirements of the Americans with Disabilities Act, the Civil Rights Act of 1964 or any similar federal, state or local law; or

any compensation, including benefits, for any person hired, promoted or reinstated pursuant to a judgment, settlement, order or other resolution of a Claim.

ENDORSEMENT NO.: 29

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 30**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH17DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

AMEND SECTION **III.,** EXCLUSIONS, A. 9.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that **Section III, Exclusions, A. 9, of the Directors and** Officers Coverage Part of the policy is deleted in its entirety and replaced with the following:

I.   based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind; provided, however, that this exclusion shall not apply to any derivative suit by a security holder of the **Company if the security holder bringing such Claim is acting totally independent of, and without the** solicitation, assistance, active participation or intervention of any **Insured Person** or the **Company;**

It is further understood and agreed that the foregoing exclusion shall not be applicable to any of the coverage provided under **Section I. Insuring Agreements, A.**

**All other terms and conditions of this Policy remain unchanged.**

**ENDORSEMENT NO.: 31**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**"WORKPLACE VIOLENCE EXPENSES" COVERAGE
AND "VIOLATION OF EMPLOYEE PRIVACY" COVERAGE**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The **Employee Practices Liability Coverage Part** is enhanced by adding "Workplace Violence Expenses" coverage as follows:

**Section L Insuring Agreement** of the **Employment Practices Liability Coverage Part** is enhanced by adding the following:

> The Insurer will pay to or on behalf of the **Company** all **Workplace Violence Expenses** incurred by an **Insured** resulting from **Workplace Violence;** provided that this Policy's maximum aggregate liability for all for all **Workplace Violence Expenses** shall not exceed **$250,000,** which amount is part of, and not in addition to, the maximum aggregate limit of liability under the **Employment Practices Liability Coverage Part** as set forth in ITEM 5 of the Declarations.

> No Retention shall apply to **Workplace Violence Expenses;** provided, however, if different parts of a single **Claim** are subject to difference Retentions, the applicable Retention will be applied separately to each part of such **Claim,** but the sum of such Retentions shall not exceed the largest applicable Retention as set forth in ITEM 6 of the Declarations. Such Retentions shall be borne by the **Insureds** uninsured and at their own risk.

For the purposes of this **Workplace Violence Expenses Coverage Part, Section III. Exclusions, A. 4.** of the **Employment Practices Liability Coverage Part** is deleted in it entirety and replaced with the following:

> based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of,

ENDORSEMENT NO.: 31

or in any way involving bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this exclusion shall not apply to any mental anguish, humiliation or emotional distress when alleged as part of an otherwise covered Claim under this coverage part.

**Section I. Defense Obligations of the General Terms and Conditions** shall not apply to the coverage for Workplace **Violence Expenses afforded pursuant to the Workplace Violence Expense Coverage Part.**

**Section II. Definitions** of the **Employment Practices Liability Coverage Part** is enhanced by adding the following definitions:

**"Workplace Violence"** will mean any intentional and unlawful act:

(i) of deadly force involving the use of lethal weapon; or

(ii)  the threat of deadly force involving the display of a lethal weapon, which occurs on or in the **Premises and which did or could result in** bodily injury or death to an **Insured Person.**

**"Workplace Violence Expenses" will** mean **the reasonable fees** and expenses, or costs of:

(i)    an independent security consultant for ninety (90) days following the same **Workplace Violence** occurs;

(ii)   an independent public relations consultant for ninety (90) days following the same **Workplace Violence** occurs;

(iii)  a counseling seminar for all Employees conducted by an independent consultant following **a Workplace Violence;**

(iv)   independent security guard services for up to fifteen (15) days; and

(v)    an independent forensic analyst.

"Premises" will mean the building, facility or properties occupied by the Company in conducting

ENDORSEMENT NO.: 31

its business.

For the purposes of this **Workplace Violence Expenses Coverage Part, Section III. Exclusions, A. 4.** of the Employment Practices Liability Coverage Part is enhanced by adding the following:

(a) for **Workplace Violence** which occurs at any location other than the Premises;

(b) for **Loss** arising from declared or undeclared war, civil war, insurrection, riot, civil commotion, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization;

(c) for legal costs, judgments and settlements incurred as the result of any claim, suit or judicial action brought against a **Company** in connection with **Workplace Violence;** or

(d) for **Loss** resulting from the use or threat of force or violence occurring on the **Premises** for the purposes of demanding money, securities or property.

The **Employee Practices Liability Coverage Part** is enhanced by adding "Violation of Employee Privacy" coverage as follows:

**Section I. Insuring Agreement** is enhanced by adding the following:

Subject to its other terms and conditions, this Policy will pay an **Insured's Costs of Defense** for defending a **Claim** alleging a **Violation of Employee Privacy,** subject to a **$50,000** maximum aggregate limit of liability for all such **Costs of Defense** under this Insuring Agreement, which amount is part of, and not in addition to, the maximum aggregate limit of liability under the **Employment Practices Liability Coverage Part** as set forth in ITEM 5 of the Declarations.

Section II. Definitions, **G.** is enhanced by adding the following to the definition of **"Wrongful Act"**:

any actual or alleged **Violation of Employee Privacy** committed, attempted, or allegedly committed or attempted by the **Company** or an Insured **Person** while acting in his or her capacity as such.

**Section II. Definitions** is enhanced by adding the following definitions:

**ENDORSEMENT NO.: 31**

"Record" will mean an **Employee's** first name or first initial, and law name, in combination with:

    (i)      their social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

    (ii)     their financial account number (including a bank account number, retirement account number, or healthcare spending account number);

    (iii)    their credit card, debit or other payment card number; or

    (iv)    any individual identifiable health information, pursuant to the Health Insurance Portability and Accountability Act of 1996 **("HIPPA"),** held by the **Company,**

when any such information in (i) though (iv) above is intended by the **Company** to be accessible only by persons or organizations specifically authorized by the **Company** to have access to such information.

**"Violation of Employee Privacy"** will mean the **Company's** failure to:

    (i)      secure an **Employee's Record** from actual or potential unauthorized access by another person or by an organization which results in injury to such employee; or

    (ii)     provide notice as required by state, federal or local statutory law or common law anywhere in the world to an employee whose **Record** was accessed or may have been accessed by an unauthorized person.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 32**

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

AMEND SECTION **III.** EXCLUSIONS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Section III. Exclusions, B.** of the **Employment Practices Liability** Coverage Part, is deleted in its entirety

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT NO.: 33**


This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company


## LIBERALIZATION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


**Section VIII. General Conditions** of the **General** Terms and Conditions is enhanced by adding a Liberalization clause which reads as follows:

> If, during the **Policy Period,** the Company is required, by law or by insurance supervisory authorities of the state in which is Policy was issued, to make any changes in the form of this Policy, by which the insurance afforded by this Policy could be extended or broadened without increased premium change by endorsement or substitution of form, then such extended or broadened insurance will inure to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.


All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 34

This endorsement, effective **12:01 am, April 1,** 2017

Forms part of policy number: CH1'7DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company

**AMEND SECTION IL DEFINITIONS, L OUTSIDE ENTITY**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Section IL Definitions, I. "Outside Entity"** of the **Directors** and **Officers Liability Coverage Part,** is deleted and replaced with the following:

I.     **"Outside Entity"** will mean: (1) any corporation or organization other than the **Company** which is exempt from taxation under the Internal Revenue Code of 1986, as amended, or any rule or regulation promulgated thereunder and (2) any other such corporation or organization other than the **Company** which is scheduled by endorsement to the Policy.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO.: 35


This endorsement, effective 12:01 am, April 1, 2017

Forms part of policy number: CH17DOL329598IV

Issued to: Tarter Farm & Ranch Equipment

By: Navigators Insurance Company


## PREDETERMINED RUNOFF ENDORSEMENT


THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that **Section VIII., General** Conditions, G., Changes in Exposure 3., is amended by adding the following:

> The **Corporation** shall have the right, upon payment of 75%, 100% or 125%, to an extension of coverage provided by this Policy with respect to any **Claims** first made against any **Insured** during the (12) months, (24) months or (36) months, respectively, after the effective date of such transaction, but only with respect to any **Wrongful Acts** committed or alleged to have been committed before the date of such transaction. The total premium shall be deemed fully earned.

> It is further agreed that as of the date of such transaction the following changes will be made to this policy:

> Section III., Discovery - Coverage Extensions, is deleted in its entirety.

> Section VII., Notice, B., is deleted in its entirety.


All other terms and conditions of this Policy remain unchanged.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury— in consultation with the Secretary of Homeland Security, and the Attorney General of the United States— to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.00 , and does not include any charges for the portion of losses covered by the United States government under the Act.

YOU SHOULD ALSO ICNOW THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE. THE PORTION OF YOUR PREMIUM ATTRIBUTABLE TO SUCH COVERAGE IS SHOWN ABOVE.

If you have any questions about this notice, please contact your agent or Broker.

NAV-ML-TERRA (02/15)

Contains copyrighted material of the National Association of Insurance Commissioners