USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/09/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
THOMAS L. GREGORY,

                              Plaintiff,

               -against-                        22-CV-4834 (VEC)

NAVIGATORS INSURANCE COMPANY,      OPINION & ORDER

                             Defendant.
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This case arises from an insurance company's alleged breach of contract by denying Plaintiff coverage for the defense of a lawsuit brought against him by another insured and others. Defendant moved to dismiss, primarily by invoking an exclusion provision in the governing policy. Because the Court concludes that the exclusion bars coverage, Defendant's motion to dismiss is GRANTED.

## BACKGROUND[1]

Plaintiff Thomas Gregory ("Mr. Gregory") was at all relevant times an employee of Tarter Gate Company, LLC d/b/a Tarter Farm & Ranch Equipment ("Tarter Gate"). *See* Compl.,

---

[1] For the purposes of this motion, the Court treated the facts alleged in the Complaint as true. The Court also considered the governing insurance policy, coverage letters, and complaint in the underlying litigation for which Plaintiff seeks coverage, all of which were attached to Defendant's declaration in support of its motion to dismiss, because courts in this Circuit may consider any statements or documents incorporated in a complaint by reference at the motion to dismiss stage. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (concluding that "statements or documents incorporated in [the complaint] by reference" are properly considered on motion to dismiss); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259, at *3 (S.D.N.Y. Mar. 18, 2021) ("In insurance disputes in particular, courts may consider the insurance policies themselves, even if they are not attached to the plaintiff's complaint."); *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 401 (S.D.N.Y. 2015) (noting that it was considering the complaint in the underlying action for which the plaintiff sought coverage in an insurance dispute at the motion to dismiss stage because the complaint "reference[d]" the underlying action and "relie[d] heavily upon its terms and effect") (internal quotation marks and citation omitted).

1

Dkt. 1, ¶¶ 7, 16.  Tarter Gate is one of several legal entities under common family ownership and control, *see* 2018 Lawsuit Compl., Dkt. 13-1, ¶¶ 19, 167; Mr. Gregory is not part of the family that owns Tarter Gate, *see* Compl. ¶ 20.  Defendant Navigators Insurance Company ("Navigators") is a New York insurance company.  *Id.* ¶ 3.  In April 2017, Tarter Gate purchased a directors and officers liability insurance policy from Navigators (the "Policy"), which insured, among others, Tarter Gate directors and employees (including Mr. Gregory) against any damages arising from claims asserted against them, including the costs of defending against such claims.  *Id.* ¶¶ 7–11.  The Policy was in effect from April 1, 2017 through April 1, 2018.  *Id.* ¶ 13.

While the Policy was in effect, three Tarter Gate security holders (including at least one insured), filed what purported to be a shareholder derivative action against, *inter alia*, Mr. Gregory and Josh Tarter ("Mr. Tarter") (the "2017 Lawsuit").  *Id.* ¶¶ 14–15.  Mr. Tarter notified Navigators of the 2017 Lawsuit.  *Id.* ¶ 15.  In November 2017, Navigators denied coverage based on the Policy's exclusion for losses incurred in connection with any claim brought by an insured or shareholder (the "IvI Exclusion").  *Id.*; *see also* 2017 Navigators Letter, Dkt. 13-4, at 2.

The IvI Exclusion, which is at the heart of this action, precludes coverage for:

> **Loss**, including **Costs[ ]of Defense**, in connection with any **Claim**[2] made against any **Insured** . . . by or on behalf of any **Insured** or any security holder of the **Company**[3][.]

---

[2]   "Claim" is defined under the Policy, in relevant part, as "a civil . . . proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."  Policy, Dkt 13-3, Endorsement No. 23.

[3]   "Company" refers to Tarter Gate.  *See* Def. Mem. in Supp. of Mot., Dkt. 12, at 5; Pl. Mem. in Opp., Dkt. 19, at 1.

Policy, Dkt. 13-3, § III A.8.[4]  Two other provisions of the Policy are critical to this case: the Assistance Provision and the Allocation Clause.  The Assistance Provision is an exception to the IvI Exclusion.  It provides that, notwithstanding the IvI Exclusion, there is coverage for:

> any **Claim** . . . brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person**[.]

*Id.* § III A.8.b.  Finally, the Allocation Clause provides:

> If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any Insured and others, the **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such a [cl]aim.

*Id.* § IV.A.

After the 2017 Lawsuit was dismissed without prejudice on standing grounds, the same plaintiffs[5] brought another lawsuit based on the same allegedly wrongful conduct (the "2018 Lawsuit"), this time with a non-insured and non-shareholder entity, C-Ville Fabricating, Inc. ("C-Ville").  Compl. ¶¶ 15–17; *see also* 2018 Lawsuit Compl.  The individual plaintiffs held a special meeting pursuant to C-Ville's operating agreement to authorize the initiation of the 2018 Lawsuit,[6] 2018 Lawsuit Compl. ¶¶ 107–31; the lawsuit alleged violations of the Racketeer

---

[4] Another exclusion, the "Specific Person Exclusion," precludes coverage for "that part of any Claim which is brought or maintained by or on behalf of" three named individuals, two of whom were plaintiffs in the 2018 Lawsuit.  *See* Policy at Endorsement No. 5.  Because those named individuals are also shareholders and therefore encompassed within the IvI Exclusion, the Court need not address the Specific Person Exclusion.

[5] The individual litigants in the 2018 Lawsuit are Anna Lou Tarter Smith ("Ms. Tarter Smith"), Luann Tarter Coffey ("Ms. Tarter Coffey"), and Douglas Tarter ("Mr. D. Tarter").  *See* 2018 Lawsuit Compl., Dkt. 13-1, ¶¶ 8–10.  The parties do not dispute that Ms. Tarter Smith is an insured under the Policy.  *See* Def. Mem. in Supp. of Mot. at 17; Pl. Mem. in Opp. at 6.  Although Plaintiff states that Ms. Tarter Coffey and Mr. D. Tarter are also insureds under the Policy, *see* Pl. Mem. in Opp. at 6, whether they are in fact insureds does not affect the Court's analysis.

[6] The individual plaintiffs held several special meetings to authorize filing derivative claims on behalf of Tarter entities.  *See* 2018 Lawsuit Compl. ¶¶ 107–65.

Influenced and Corrupt Organizations Act, the Defend Trade Secrets Act, and Kentucky's Uniform Trade Secrets Act, among other claims, *see generally* 2018 Lawsuit Compl.

Mr. Tarter asked Navigators to defend and indemnify him for the new lawsuit; on April 29, 2020, Navigators once again declined coverage, in part based on the IvI Exclusion. Compl. ¶ 20; 2020 Navigators Letter, Dkt. 13-5, at 3–4.

On June 3, 2020, Mr. Tarter sought a declaratory judgment in the Eastern District of Kentucky (the "Kentucky Insurance Lawsuit") that Navigators was required to defend and indemnify him in connection with the 2018 Lawsuit, notwithstanding the IvI Exclusion. Compl. ¶ 20; *see also* Compl., *Tarter v. Navigators Ins. Co.*, No. 5:20-240 (KKC) (E.D. Ky. filed June 3, 2020). On January 25, 2021, the Kentucky District Court dismissed the lawsuit, holding that the IvI Exclusion applied. Compl. ¶ 20; *see also Tarter v. Navigators Ins. Co.*, No. 5:20-240 (KKC), 2021 WL 149302, at *9 (E.D. Ky. Jan. 15, 2021).

Six months later, Mr. Gregory requested Navigators to defend and indemnify him for the 2018 Lawsuit; that request was made by the same attorney who represented Mr. Tarter. *See* Compl. ¶ 18; Gregory Claim, Dkt. 13-8. Navigators denied coverage again based, in part, on the IvI Exclusion. *See* 2021 Navigators Letter, Dkt. 13-9. On October 25, 2021, the Sixth Circuit affirmed the Eastern District of Kentucky's dismissal of the Kentucky Insurance Lawsuit on the same grounds. Compl. ¶ 20*; see also Tarter v. Navigators Ins. Co.*, No. 21-5129, 2021 WL 4950375 (6th Cir. Oct. 25, 2021).

This lawsuit followed. *See* Compl. Navigators has moved to dismiss, primarily on the grounds that the IvI Exclusion bars coverage for the 2018 Lawsuit.[7] *See* Not. of Mot., Dkt. 11;

---

[7]   Defendant also argues that the Specific Person Exclusion, Plaintiff's purported misrepresentation in the insurance application, and the fortuity doctrine bar coverage, and that certain causes of action were outside the scope of coverage under the Policy. *See generally* Def. Mem. in Supp. of Mot. Because the Court dismisses the case based on the IvI Exclusion, it need not address those other arguments.

Def. Mem. in Supp. of Mot., Dkt. 12. Although Navigators did not raise res judicata as a defense, the Court *sua sponte* ordered briefing on whether this case should be dismissed on those grounds.[8]  *See* Order, Dkt. 21.

## DISCUSSION

### I.   Res Judicata Does Not Bar This Action

Although the Complaint in this case is almost identical to the one filed by Mr. Tarter in the Kentucky Insurance Lawsuit, it cannot be dismissed on res judicata grounds because Defendant failed to demonstrate that Plaintiff's due process rights would not be violated if he were deemed to be in privity with Mr. Tarter.

This Court's res judicata analysis is generally governed by Kentucky law.  *See Harrison v. Diamonds*, No. 14-CV-484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (noting that a federal court sitting in diversity jurisdiction "determines the preclusive effect to be given a prior judgment by applying the res judicata law of the state in which the court that entered the prior judgment sat")). Any decision must also comport with federal due process standards.  *See Steinhardt v. UBS Secs. LLC*, No. 9-CV-1438 (ARR) (RER), 2010 WL 11538536, at *4 (E.D.N.Y. Mar. 19, 2010) (noting that "the application of a state's res judicata doctrine must be consistent with

---

[8]    Because this case is before the Court on diversity jurisdiction, federal law governs whether the Court can, as a procedural matter, consider res judicata as a defense to this action notwithstanding Defendant's failure to address the defense in its briefing.  *See McDonnell v. AMC Entm't Holdings Inc.*, No. 20-CV-5378 (JCM), 2022 WL 3274166, at *4 (S.D.N.Y. Aug. 11, 2022) (noting that the Federal Rules of Civil Procedure "govern the issues of waiver" in a diversity action) (internal citations omitted); *Hayden Capital USA, LLC v. Northstar Agri Indus.*, No. 11-CV-594 (DAB), 2015 WL 5698543, at *8–9 & n.5 (S.D.N.Y. Sept. 25, 2015) (applying federal law to rule *sua sponte* on the issue of res judicata in a diversity action).  Courts applying federal procedural law in this Circuit are "free to raise [the res judicata] defense *sua sponte*, even if the parties have seemingly waived it."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398 n.4 (2d Cir. 2003).  It was, therefore, proper for the Court to request supplemental briefing on this issue despite Defendant's failure to raise it.

5

fundamental federal rights such as due process") (citing *Richards v. Jefferson County*, 517 U.S. 793, 797 (1996)).

For claim preclusion — a subpart of res judicata — to apply under Kentucky law, three elements must be met: "(1) there must be an identity of parties [or their privies] between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Miller v. Admin. Off. of Cts.*, 361 S.W.3d 867, 872 (Ky. 2011); *see also City of Louisville v. Louisville Pro. Firefighters Ass'n*, 813 S.W.2d 804, 806 (Ky. 1991). Because the prior action was brought by Mr. Tarter, not Plaintiff, the Court would need to conclude that Mr. Tarter represented Plaintiff's interests as his privy for res judicata to apply.

The Supreme Court held in *Taylor v. Sturgell* that a party's representation of a nonparty satisfies due process if "at a minimum: (1) The interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." 553 U.S. 880, 900 (2008) (internal citations omitted). In addition, adequate representation "sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id.* (citation omitted).

Defendant incorrectly asserts that *Taylor* is irrelevant because "that case did not concern the application of *res judicata*," and makes no attempt to demonstrate that the minimum requirements for due process would be satisfied beyond conclusory assertions in a footnote. Def. Res Judicata Mem., Dkt. 23, at 4 & n.2. Because Defendant failed to show that applying res judicata to this case would not violate Plaintiff's due process rights, the Court cannot dismiss this action on that basis. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 510 & n.67 (2d Cir. 2019) ("Because preclusion is an affirmative defense, it was [defendant's] burden

to . . . prove that these procedural protections were in place to justify nonparty preclusion under the representative suit exception.").

    II.    **Plaintiff Failed to State a Claim for Breach of Contract**

        A. **Legal Standard**

"To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Moreover, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

Because the parties both assume that Kentucky law applies to the merits of Plaintiff's breach-of-contract claim, the Court will do the same. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (concluding in a diversity case that the parties' "implied consent" to a state's law in their briefing was "of course [] sufficient to establish the applicable choice of law").

To state a prima facie case for breach of contract under Kentucky law, a plaintiff must allege "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma,* 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citing *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007)). An insurer breaches an insurance contract if it fails to defend the insured in violation of a contractual duty to defend; there is a duty to defend "if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005). There is, however, no duty to defend claims that are "expressly excluded" under the contract. *Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 n.33 (Ky. 2005) (citing *Ky. Farm Bureau Ins. Co. v. Cann*, 590 S.W.2d 881, 883 (Ky. Ct. App. 1979)).

Two "cardinal principles" apply to the interpretation of insurance contracts under Kentucky law: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (internal quotation marks and citations omitted). Kentucky's rule of construction favoring coverage does not, however, "mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning in the contract." *Tower Ins. Co. of N.Y. v. Horn*, 472 S.W.3d 172, 174 (Ky. 2015) (citing *McClendon*, 157 S.W.3d at 630). Moreover, "the intention of the parties to a contract is to be gathered from the whole context of the agreement, and no part of the agreement should be construed as meaningless, ineffectual, or rejected as mere surplusage if it serves a reasonable purpose." *Price v. Toyota Motor Mfg. Ky.*, No. 2017-CA-000560 (WC), 2017 WL

3498777, at *3 (Ky. Ct. App. July 28, 2017) (citing *Siler v. White Star Coal Co.*, 226 S.W. 102, 104 (Ky. 1920)). "[S]pecific clauses in insurance policies control general clauses." *Essex Ins. Co. v. Morton Const., LLC*, No. 12-138 (GFVT), 2014 WL 517514, at *6 (E.D. Ky. Feb. 7, 2014) (quoting *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801, 803 (Ky. Ct. App. 1985)).

### B. Plaintiff Has Not Alleged that Defendant Breached a Duty Under the Policy

Plaintiff cannot recover in this case because he has failed to allege that Defendant breached a duty under the Policy. The IvI Exclusion states that Defendant is not liable for loss in connection with "any **Claim**" made against any insured by another insured or by a Tarter Gate security holder. *See* Policy § III A.8. "Claim" is defined broadly to include "a civil . . . proceeding" and is, therefore, not limited to a single cause of action within a proceeding. *Id.* § II.A. As neither party disputes, Def. Mem. in Supp. of Mot. at 17, Pl. Mem. in Opp., Dkt. 19, at 6, the IvI Exclusion applies in the first instance because the 2018 Lawsuit was brought by three Tarter Gate security holders and at least one insured.

At issue is which Policy provision controls next. Plaintiff urges the Court to look to the Allocation Clause, which states that if a "Claim" includes "both covered and uncovered matters," then there "must be an allocation between Loss and uninsured damages" in connection with the Claim. *See* Pl. Mem. in Opp. at 6–7 (citing Policy § IV.A). According to Plaintiff, the portion of the 2018 Lawsuit attributable to the claims of C-Ville is a covered "matter" within the lawsuit as to which Defendant was obligated to provide coverage. *Id.*

The Court disagrees. Before reaching for a provision in a separate section of the Policy, the Court must interpret the Assistance Exception to the IvI Exclusion. Under the Assistance Exception, a "Claim" otherwise excluded from coverage by the IvI Exclusion is covered if it was "brought by any security holder of the **Company**" and the security holder "is acting totally

9

independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person.**" Policy § III A.8.b. Because the 2018 Litigation was brought by at least one Tarter Gate security holder, the litigation implicates the Assistance Exception. The Assistance Exception provides coverage for a lawsuit brought by a "security holder of the Company" even if Tarter Gate or an insured is also a party plaintiff, but only if the security holder-plaintiff litigates independently of the insureds and the Company.

In *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, for example, the Eleventh Circuit, faced with a similar insured vs. insured exclusion and assistance exception, concluded that a securities class action was not covered by the insurance policy because the insured plaintiff was not a "passive shareholder who joined a larger suit," but rather "*brough*t the lawsuit and *recruited* every other plaintiff." 412 F.3d 1224, 1230–31 (11th Cir. 2005).[9] The same reasoning applies here. Although the Assistance Exception provides coverage for certain actions brought by security holders, it does not provide coverage in this case because the security holders who brought the 2018 Lawsuit did not act "totally independently of" insureds; it is undisputed that Ms. Tarter Smith (an insured) spearheaded the litigation from its inception. The Assistance Exception to the IvI Exclusion is, therefore, not satisfied.

The Allocation Clause does not change the analysis. It applies if a "**Claim**" includes "both covered and uncovered matters" or if it is made "against any Insured and others." *See* Policy § IV.A. It does not expressly address claims *brought by* an insured and others. Such claims are expressly governed by the IvI Exclusion, which bars coverage for the underlying

---

[9] The insured vs. insured provision in *Sphinx* barred coverage for claims "[b]y or at the behest of . . . any DIRECTOR or OFFICER," and the assistance exception granted coverage for such a claim "instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY." 412 F.3d at 1231. Although the policy in *Sphinx* did not include an allocation clause, the Allocation Clause in this case does not change the analysis, as addressed *infra*.

10

litigation as a whole unless the Assistance Exception applies. *See Essex Ins. Co.*, 2014 WL 517514, at *6.

As the parties are aware, a U.S. District Court in Kentucky, affirmed by the Sixth Circuit, came to this same conclusion when interpreting the same Policy under Kentucky law. *See Tarter*, 2021 WL 149302, at *5, *aff'd*, No. 21-5129, 2021 WL 4950375 (6th Cir. Oct. 25, 2021) (concluding that coverage is barred because an insured "actively participated in bringing the Claim" rendering the Assistance Exception inapplicable). The Eighth Circuit came to the same conclusion as the District Court in Kentucky in a dispute involving a similarly "straightforward application" of an exclusion clause under Minnesota law. *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 888, 891 (8th Cir. 2017) (concluding that the policy's provision speaking "directly to lawsuits brought with the participation of [i]nsured [p]ersons" controlled over a "general" allocation clause).

The Court briefly addresses Plaintiff's analysis of caselaw regarding similar, but not identical, insurance policies and underlying lawsuits in other jurisdictions. Plaintiff argues that this case is "on all fours" with *Level 3 Commc'ns v. Fed. Ins. Co.*, 168 F.3d 956, 961 (7th Cir. 1999), in which the Seventh Circuit concluded that an insured vs. insured exclusion did not bar coverage for an underlying lawsuit brought in part by non-insureds because of an allocation clause. Pl. Mem. in Opp. at 8. In reaching that conclusion, however, the *Level 3* court did not discuss any exceptions in the policy to the insured vs. insured exclusion. Although the defendant's brief in that case suggests that the insured vs. insured provision had exceptions, *see* Def. Br., *Level 3 Commc'ns*, 168 F.3d 956 (No. 98-2094), 1998 WL 34077617, at *4 (Aug. 7, 1998), unlike in this case, the exceptions did not apply to the underlying lawsuit.[10]

---

[10] The three exceptions were: "(i) a Claim that is a derivative action brought or maintained on behalf of an Insured Organization by one or more persons who are not Insured Persons and who bring and maintain the Claim

11

Plaintiff's reliance on *Miller v. St. Paul Mercury Insurance Co.*, 683 F.3d 871 (7th Cir. 2012), is similarly misplaced. In *Miller,* the Seventh Circuit concluded that an allocation clause required coverage for defense costs and losses attributable to non-insured plaintiffs who sued the insured corporation and its former directors and officers even though three of the five plaintiffs were insureds. *Id.* at 880. Although the court discussed exceptions to the insured vs. insured exclusion, it expressly noted that there was no language in the policy that "would defeat coverage for a claim by a non-insured plaintiff depending on whether she acted independently of insured plaintiffs." *Id.* at 879.[11] That, of course, is precisely what the Assistance Exception does in this case.[12]

The final case Plaintiff discusses at length,[13] *Vita Food Products, Inc. v. Navigators Insurance Co.*, No. 16 C 08210 (MEA), 2017 WL 2404981 (N.D. Ill. June 2, 2017), is also

---

without the solicitation, assistance or participation of any Insured, (ii) a Claim brought or maintained by an Insured Person for the actual or alleged wrongful termination of the Insured Person, or (iii) a Claim brought or maintained by an Insured Person for contribution or indemnity, if the Claim directly results from another Claim covered under this coverage section." Br. of Def. at 4, *Level 3 Commc'ns v. Fed. Ins. Co.*, 168 F.3d 956 (7th Cir. 1999) (No. 98-2094), 1998 WL 34077617, at *4 (internal citation omitted). The underlying lawsuit was filed by eight minority shareholders "for securities fraud and related torts," and neither party argued that the case had been brought derivatively. *Level 3*, 168 F.3d at 957. The lawsuit, therefore, did not even arguably implicate any of the exceptions.

[11]  The policy at issue in *Miller* only excluded coverage for lawsuits brought by any insured or the company, not non-insured shareholders, and included seven exceptions, none of which conceivably was implicated by the underlying lawsuit for fraud, civil conspiracy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See Miller*, 683 F.3d at 880. The insurance company in *Miller* unsuccessfully argued that the policy's exceptions, "by negative implication," barred coverage of any claim when it included the active participation of any insured plaintiff. *Id.* at 879. By contrast, here, the Assistance Exception is clearly implicated by the 2018 Lawsuit because it was brought, in part, by shareholders. It does not apply, however, because at least one insured actively participated in the action.

[12]  The *Miller* Court expressly agreed with the reasoning in *Sphinx International* that if the policy has an assistance provision that governs the litigation at issue, that provision, and not the allocation clause, governs. 683 F.3d at 879 ("Because the [plaintiff-insured] in *Sphinx International* actively solicited the other plaintiffs, the 'plain and clear' language of the insured vs. insured exclusion barred the entire lawsuit. We have no disagreement with that reasoning . . . ." (internal citation omitted)).

[13]  The cases Plaintiff cites in passing also do not undermine the Court's conclusion. *See Bodewes v. Ulico Cas. Co.*, 336 F. Supp. 2d 263, 273 (W.D.N.Y. 2004) (concluding that caselaw discussing insured vs. insured exclusions as applied to "insurance coverage for corporate director and officer liability" was "neither entirely accurate nor entirely helpful" because the case involved a "trustee fiduciary liability policy," and not discussing any

distinguishable. In *Vita*, an Illinois District Court concluded that a similar assistance exception to an insured vs. insured exclusion, which provided coverage for a claim brought by a security holder as long as they were acting "totally independent" of any director or officer, did not necessarily bar coverage for an entire lawsuit brought by both insureds and non-insured former shareholders because of an allocation clause. *Id.* at *8. But unlike in this case, the *Vita* court could not determine at the motion to dismiss stage whether non-insured *former* shareholder plaintiffs qualified as "security holders" under the policy, and did not consider the extent to which two of the twenty-four plaintiffs (who were directors) had participated in the underlying lawsuit. *Id.* at *9.

Although the Court is cognizant that Kentucky law requires reading insurance contracts liberally in favor of coverage, it cannot adopt Plaintiff's interpretation of the Policy without rewriting it; Plaintiff has failed to state a claim for breach of contract.

---

conceivable exception to the insured vs. insured exclusion); *Fed. Ins. Co. v. Infoglide Corp.*, No. A-05-CA-189 (AWA), 2006 WL 2050694, at *8 (W.D. Tex. July 18, 2006) (concluding that the underlying claims were direct, rather than derivative claims, and were therefore not encompassed by the assistance exception, which only applied to derivative claims); *Megavail v. Ill. Union Ins. Co.*, No. 05-CV-1374 (AS), 2006 WL 2045862 (D. Or. July 19, 2006) (concluding that an exception to an insured vs. insured provision was satisfied because four of the six plaintiffs were not insureds and acted independently); *AMERCO v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV 13-2588 (PHX) (PGR), 2014 WL 2094198, at *7–8 (D. Ariz. May 20, 2014) (not addressing the interplay between an exception clause and an allocation clause because the policy did not include an allocation clause).

## CONCLUSION

For the foregoing reasons, Plaintiff's case is DISMISSED for failure to state a claim. The Clerk of Court is respectfully directed to close the open motion at Docket 11 and to close the case.

**SO ORDERED.**

Date:  **December 9, 2022**
 **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**